IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**THE STELLAR GROUP**                                                                 **PLAINTIFF**

VS.                                              CIVIL ACTION NO. 3:06-cv-186-WHB-LRA

**PILGRAM'S PRIDE CORPORATION and
ANIKA AND ASSOCIATES, INC.**                                                   **DEFENDANTS**

<u>OPINION AND ORDER</u>

This cause is before the Court on several motions filed by the parties including the Motion of Plaintiff The Stellar Group and Defendant Pilgrim's Pride Corporation to Enforce Settlement Agreement ("Motion to Enforce"), the Motion of Defendant Anika and Associates, Inc., to Stay Ruling on Joint Motion to Enforce Settlement Agreement ("Motion to Stay"), and the Motion of Defendant Pilgrim's Pride Corporation to Dismiss Cross-Claim and Compel Mediation and Arbitration or, in the alternative, Motion to Stay Proceedings and Compel Mediation and Arbitration ("Motion to Dismiss").  The Court has considered the Motions, Responses, Rebuttals, attachments to each, as well as supporting and opposing authority, and finds that the Motion to Stay is not well taken and should be denied, and that the Motion to Enforce is well taken and should be granted.  As the Court finds that the Settlement Agreement entered by the parties should be enforced, the Court additionally finds that the Motion to Dismiss should be denied as moot.

## I. Factual Background and Procedural History

In December of 2004, Plaintiff, The Stellar Group ("Stellar") entered a contract with Defendant, Pilgrim's Pride Corporation ("Pilgrim's") whereby Stellar was hired to make renovations and repairs to real property located in Jackson, Mississippi, that was leased to Pilgrim's by its owner Defendant, Anika and Associates, Inc. ("Anika").[1] Under the terms of the lease, Anika was obligated to pay for, or contribute toward the payment of, certain renovations and repairs to the property. On January 5, 2005, Anika sold the subject property to Spirit Finance Acquisitions, LLC.

Stellar began work in December of 2004, and Anika sent a Substantial Completion Notice to Pilgrim's on or about February 16, 2005. In the Spring of 2005, Stellar sought payment in the amount of $565,508.00 for the work it had performed. Anika remitted payment in the amount of $341,133.33. The remaining balance of $224,374.67 has not yet been paid.

In June of 2005, Stellar, Pilgrim's, and Anika began discussions regarding the amount owed to Stellar for the work it had performed. During these discussions, Stellar was represented by its Regional Director Stan Deason, Pilgrim's was represented by its Vice Chairman of the Board Cliff Butler, and Anika was

---

[1] The contract between Stellar and Pilgrim's was approved by Anika in writing.

represented by its President, Murray D. Wikol ("Wikol").  Mot. to Enforce, Ex. 1 (Affidavit of Cliff Butler, at ¶¶ 9-10).  On or about June 23, 2005, the parties reached an agreement whereby Anika would pay $512,799.00 towards the total cost of $565,508.00, and Pilgrims' would pay the remaining $52,709.00.  On June 30, 2005, Wikol sent an e-mail indicating that counsel for Anika was "working up the Settlement and Release Agreement."  Later that day, counsel for Anika informed Stellar and Pilgrim's that they were "in the process of drafting the Mutual Release and Settlement Agreement for Anika and Associates, Pilgrim's Pride, and The Stellar Group," and on July 6, 2005, indicated that a settlement agreement "should be finalized by the end of today."  Id., Ex. B.  On July 11, 2005, counsel for Anika sent a copy of the proposed Settlement Agreement and accompanying exhibits ("Agreement") to Stellar and Pilgrim's for review and signature.  Id., Ex. C.  Thereafter, between July, 11, 2005, and August 3, 2005, several revisions were made to the Agreement.  Id., Ex. C.

On August 3, 2005, counsel for Anika sent the following e-mail to Stellar:  "Peter Schreck (counsel for Anika) has been in contact with your attorneys, as well as Pilgrim's ... looks like we finally have an agreement with which all parties are satisfied."  Id., Ex. D.  Thereafter, on August 5, 2005, Schreck sent the proposed Agreement to counsel for Stellar and Pilgrim's with the following message:

> If you have any objections to any of the terms of the agreement, then please let me know, thus far, I have not heard any objections. Otherwise, please print the attached documents, execute them and return them to my office. I will then compile a complete set of all documents [and] provide everyone with executed copies.

Id., Ex. E. The Agreements were signed by Cliff Butler, Vice Chairman of Pilgrim's, and Jeff Williams, Vice President of Stellar, and returned to counsel for Anika. Id., Exs. 2, E & G.

On August 22, 2005, Stellar sent an e-mail to counsel for Anika expressing its understanding that "all documents have been agreed upon, signed, and returned", and inquiring when it could expect payment under the terms of the Agreement. Counsel for Anika responded by assuring Stellar that it would be notified as soon as possible regarding when payment would be made. Id., Ex. I. On September 21, 2005, Stellar again e-mailed counsel for Anika indicating that payment had not yet been received. In response, counsel for Anika indicated that the only individual authorized to sign the check for payment was out of the office, but that attempts to get the situation "resolved a.s.a.p." would be made. Id., Ex. J. On October 17, 2005, counsel for Anika sent an e-mail indicating that he had spoken with his client regarding the Agreement, and that Anika had decided to not sign it based on "numerous problems and additional costs related to Stellar's work that Pilgrim's Pride has incurred and Anika now has to cover." Id. Ex. K. The record does not evidence any further communications between the parties regarding the Agreement.

4

After filing a construction lien against the subject property, Stellar filed a Complaint against Pilgrim's and Anika in the Circuit Court for the First Judicial District of Hinds County, Mississippi, seeking to enforce the lien through foreclosure and to collect any deficiency under the doctrine of *quantum merit*. The case was removed to this Court on March 30, 2006, and on April 6, 2006, Anika filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). On April 28, 2006, while the Motion to Dismiss was pending, Stellar filed a Motion to Amend its Complaint seeking, *inter alia*, to add Spirit Finance Acquisitions, LLC ("Spirit") as a defendant. On July 10, 2006, the Court entered an Order granting the Motion to Amend, and granting in part the Motion to Dismiss.

Through the First Amended Complaint, Stellar seeks to (1) enforce the Settlement Agreement entered by the parties, (2) enforce its construction lien through foreclosure, and (3) recover a monetary judgment under the doctrines of *quantum merit*, unjust enrichment, and/or as a third party beneficiary to the contract between Anika and Pilgrim's that was later assigned to Spirit. The Motion to Enforce the Settlement Agreement is now before the Court.

## II.  Legal Analysis

**1.   Motion to Stay Ruling on Motion to Enforce Settlement Agreement**

Anika seeks to stay consideration of the Motion to Enforce pending discovery. In support of its motion, Anika cites Rule 56(f) of the Federal Rules of Civil Procedure, which provides:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The United States Court of Appeals for the Fifth Circuit has found that Rule 56(f) allows a court to permit additional discovery "if the non-movant files affidavits showing that he or she 'cannot for reasons stated present by affidavit facts necessary to justify the party's opposition.'" Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 162 (5th Cir. 2006) (referencing FED. R. CIV. P. 56(f)).

In the case *sub judice*, Anika has not filed any affidavits in support of its perceived need for additional discovery on the issue of whether the subject Agreement should be enforced. Accordingly, the Court finds that the Motion to Stay should be denied.

**2. Motion to Enforce**

Before considering whether the subject Settlement Agreement should be enforced, the Court must find that a valid contract exists. This case is before the Court under diversity jurisdiction and involves a transaction that took place in Mississippi. Therefore, the Court will apply Mississippi law. Under Mississippi law, the existence of a contract is a question of fact. Hunt v. Coker, 741 So. 2d 1011, 1014 (Miss. Ct. App. 1999). Accordingly the

Court will apply a summary judgment standard when considering whether an enforceable Agreement exists.

**a.  Summary Judgment Standard**

Under Mississippi law, Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The movant need not,

however, support the motion with materials that negate the opponent's claim.  Id.  As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim.  Id. at 323-24.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence."  Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial.  National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

**b.  Is the Settlement Agreement enforceable?**

Under Mississippi law, "[a] settlement is a contract and is judged by principles of contract law."  Parmley v. 84 Lumbar Co., 911 So. 2d 569, 573 (Miss. Ct. App. 2005), *cert. denied*, 920 So. 2d 1008 (Miss. 2005).  This State recognizes, and will enforce, both

oral and written contracts. Id. (citing Murphree v. W.W. Trans., 797 So. 2d 268, 273 (Miss. Ct. App. 2001)). For a contract to be valid, the following elements must be present: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." Rotenberry v. Hooker, 864 So. 2d 266, 270 (Miss. 2003) (quoting Lanier v. State, 635 So. 2d 813, 826 (Miss. 1994)). "When examining a contract, a court should first examine the four corners of the contract to determine how to interpret it. If the language in the contract is clear and unambiguous the intent of the contract must be effectuated." Id. (alterations in original) (citations omitted). See also Tagert v. Tagert, 381 So. 2d 597, 600 (Miss. 1980) (quoting Hutton v. Hutton, 119 So. 2d 369, 374 (Miss. 1960)):

> This Court … observed that the general rule, in reference to the enforcement of specific performance of contracts, is that 'the contract must be specific and distinct in its terms, plain and definite in its meaning, and must show with certainty that the minds of the parties had met and mutually agreed as to all its details upon the offer made, upon the one hand, and accepted upon the other. If any of these requisites be lacking, specific performance will not be decreed by a court of equity.'

Anika does not challenge the subject Agreement based on whether: (1) it was made by two or more contracting parties, (2) there was adequate consideration, (3) there was a sufficiently definite agreement, (4) the parties had legal capacity to contract,

9

or (5) a settlement agreement is permitted by law. The Court finds that each of these elements is present. Anika does, however, dispute the issue of mutual assent and argues that there was "no meeting of the minds" with regard to the terms of the Agreement. The record does not support this argument.

Whether there was a meeting of the minds is determined by considering whether the parties mutually agreed to the terms offered and accepted. Hutton, 119 So. 2d at 374. The record shows that as early as June 23, 2005, the parties agreed to settle the dispute regarding the payment owed to Stellar.[2] See Mot. to Enforce, Exs. A & B. On July 11, 2005, counsel for Anika drafted and sent a proposed settlement agreement to Stellar and Pilgrim's. Id., Ex. C. Between July 19, 2005, and August 5, 2005, revisions regarding the timing and language of the releases were made to the proposed agreement, but the amount to be paid by Anika and Pilgrim's in settlement did not change. Id., Ex. C. On August 5, 2005, counsel for Anika sent finalized Agreements, that they had drafted, to Stellar and Pilgrim's with the following instruction:

> If you have any objections to any of the terms of the agreement, then please let me know, thus far, I have not heard any objections. Otherwise, please print the attached documents, execute them and return them to my office. I will then compile a complete set of all documents [and] provide everyone with executed copies.

---

[2] The settlement was reached by Stan Deason, Regional Director for Stellar; Cliff Butler, Vice Chairman of the Board for Pilgrim's, and Murray D. Wikol, President of Anika. See Mot. to Enforce, Ex. 1 (Affidavit of Cliff Butler, at ¶¶ 9-10).

Id., Ex. E.  The terms of the Agreement provide, in relevant part:

> D.   Pursuant to the [contract between Stellar and Pilgrim's], Stellar is owed $565,508.00, the payment of which Anika and Pilgrim's are jointly responsible as Landlord and Tenant.  As between Anika and Pilgrim's, Anika has agreed to pay $512,799.99 and Pilgrim's has agreed to pay $52,709.00 of the total amount due to Stellar.
>
> E.  Anika and Pilgrim's are desirous of setting forth the allocation of monies owed to Stellar and each of the parties hereto desire to settle and release each other with respect to the [contract between Stellar and Pilgrim's].

Id., Ex. E.[3]

Thus the record shows that as early as June 21, 2005, and as recently as August 5, 2005, Anika agreed to pay $512,799.99, and Pilgrim's agreed to pay $52,709.00, to settle the claim of Stellar for work performed to the subject property, and that Stellar and Pilgrim's accepted the terms of the Agreement, as drafted by Anika. Id., Exs. F & G.

In support of its claim that there was not a meeting of the minds, Anika first argues:

> Anika no longer owns the property in question.  If Anika paid Stellar $171,655 as called for by the alleged settlement agreement, Anika would be required to pay approximately $171,655 without receiving compensation in the form of amortizing the overages back into the lease

---

[3] Under Mississippi law, counsel for Anika "is presumed to have the authority to speak for and bind his client." Parmley, 911 So. 2d at 573 (citing Fairchild v. General Motors Acceptance Corp., 179 So. 2d 185, 187 (Miss. 1965)).  Anika does not challenge whether its attorneys were authorized to draft the subject Agreements to include all of the terms contained therein, or to extend the proposed Agreements to Stellar and Pilgrim's.

>  term as required by the Work Letter.  Since Anika is not
>  the owner of the property, it would be impossible for
>  Anika to amortize the $171,655 over the lease term.  This
>  would create a windfall in favor of Pilgrim's Pride in
>  escaping obligations to its contractor.  Accordingly,
>  Anika never entered into the proposed agreement.

See Resp to Mot. to Enforce, Ex. B, Affidavit of Wikol, ¶ 10.  The record shows, however, that at the time the parties agreed to settle their dispute, Anika no longer owned the subject property as it had already been sold to Spirit.  The Court finds that as Anika did not own the subject property at the time settlement negotiations began in June of 2005, or at the time the Agreement was entered, it knew or should have known that it would not be able to amortize the amount it agreed to pay Stellar in settlement over the course of the lease term.  Accordingly, the Court finds that the claim by Anika that mutual assent was lacking based on its inability to amortize the amount paid in settlement lacks merit.

Anika also claims that a meeting of the minds did not occur because under the terms of the Agreement it is obligated to pay more than it originally agreed to pay under the lease with Pilgrim's. See Id. at ¶ 10 ("Anika did not execute the settlement agreement because the additional bills together with the settlement agreement would have required Anika to expend $171,655 over and above the requirements of the Lease Agreement.").[4]

---

[4]  The term "additional bills" refers to invoices allegedly submitted to Anika for payment by other contractors that performed improvements on the property on behalf of Pilgrim's.

Again, the Court disagrees. First, Anita claims that it "understood throughout the negotiation process that its obligations would not exceed what was required under the terms of the Work Letter" it entered with Pilgrim's. Id., at ¶ 8. Anika, however, expressly agreed, under the terms of the Agreement, to deposit the sum of $171,655 to satisfy the compromise balance owed to Stellar. Mot. to Enforce, Ex. E. (Settlement Agreement, at ¶ 1.1).[5] That the payment required under the Agreement exceeded its obligations under the lease is something Anika knew or should have known at the time it agreed to settle the claim for $171,655. Similarly, as Anika was allegedly paying "additional bills" beginning in June of 2005, it was aware that it had incurred these additional expenses before the date on which the finalized Agreement was offered to, and accepted by, Stellar and Pilgrim's.

The Court finds that at the time the Agreement was entered, Anika knew or should have known that (1) its obligations under that Agreement would exceed those contained in the Work Letter and/or Lease, and (2) that it had paid "additional bills" relating to the renovations or repairs of the subject property. As Anika was aware of these matters at the time the Agreement was entered, the Court

---

[5] The compromise balance is the difference between the total amount agreed to be paid by Anika under the Settlement Agreement ($512,799.99) and the amount it had previously paid to Stellar ($341,144.00).

finds that Anika cannot not claim mutual assent was lacking based on either of these factors.

In sum, the Court finds that there does not exist a genuine issue of material fact regarding whether the parties mutually assented to the terms of the subject Agreement.  As all of the elements necessary to support a finding of a valid contract are present, the Court finds that the subject Settlement Agreement is both valid and enforceable, as written, under Mississippi law.

**c.   Have Stellar and Pilgrim's abandoned their right to enforce the Settlement Agreement?**

Mississippi law recognizes that:

> Rights acquired under a contract may be abandoned or relinquished by agreement or conduct clearly indicating such purpose.  Intent to abandon or rescind may be inferred from conduct of the parties which is inconsistent with the continued existence of the agreement.  Mutual assent to rescind or abandon a contract may be manifested in other ways than by words.

Tagert, 381 So. 2d at 600 (quoting Broome Const. Co. v. Beaver Lake Recreational Ctr., Inc., 229 So. 2d 545, 547 (Miss. 1969)).  Anika argues that an enforceable agreement does not exist as evidenced by the actions taken by Stellar and Pilgrim's after the alleged Agreement was reached, specifically the request for reimbursement of utility costs made by Pilgrim's, and the filing of the above referenced lawsuit by Stellar.  The Court disagrees.

First, with regard to the request for reimbursement of utility costs, the record shows that these costs are not related to the

14

subject dispute as Pilgrim's sought reimbursement after erroneously paying utility bills for other property owned by Anika.  <u>See</u> Resp. to Mot. to Enforce, Exs. D & E.  Additionally, as the claim for which reimbursement was sought arose on or about October 5, 2005, it did not arise prior to the date on which the settlement was entered and, therefore, would not have been released through that Agreement.  <u>See</u> Mot. to Enforce, Ex. E (Settlement Agreement) (providing that Pilgrim's released Anika from any claim existing prior to the date of release).  Second, the Court finds that the filing the above referenced lawsuit does not evidence a decision by Stellar to abandon or relinquish its contractual rights, as it promptly sought to amend its Complaint to seek enforcement of the Agreement and it did not participate in substantial litigation prior to asserting that right.  <u>See</u> <u>e.g.</u> <u>Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.</u>, 304 F.3d 476, 484 (5th Cir. 2002) (finding, with regard to enforcing a contractual right to arbitrate, that that right is not waived based on mere delay.  Instead the party invoking the right must substantially participate in litigation procedures before waiver will be recognized).

Accordingly, the Court finds that there does not exist a genuine issue of material fact with regard to whether Stellar and/or Pilgrim's waived or otherwise abandoned their right to enforce the subject Settlement Agreement in this case.

**d.  Request for attorneys' fees**

Stellar and Pilgrim's seek to recover the attorneys' fees and costs incurred in enforcing the subject Agreement.  Under Rule 54(d)(2) of the Federal Rules of Civil Procedure, a claim for attorneys' fees and costs must be made by motion, and must be made within fourteen days after entry of judgment.  As neither Stellar nor Pilgrim's complied with Rule 54, the Court finds that their request for attorneys' fees must presently be denied.

### III.  Conclusion

The Court finds that the settlement entered by the parties, as memorialized by the Settlement Agreement of August 5, 2005, should be enforced in its entirety.  As the Settlement Agreement would resolve all disputes among the parties relating to the payment sought by Stellar for the work performed on the subject property, the Court finds that the Motion of Pilgrim's to Dismiss the Cross-Claim filed against it in this case is moot.

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Plaintiff The Stellar Group and Defendant Pilgrim's Pride Corporation to Enforce Settlement Agreement [Docket No. 31] is hereby granted.  The parties are hereby ordered to fully consummate and execute all documents relative to the settlement of this matter within thirty (30) days of the date of this Order.

IT IS FURTHER ORDERED that Motion of Defendant Anika and Associates, Inc., to Stay Ruling on Joint Motion to Enforce Settlement Agreement [Docket No. 38] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Defendant Pilgrim's Pride Corporation to Dismiss Cross-Claim and Compel Mediation and Arbitration or, in the alternative, Motion to Stay Proceedings and Compel Mediation and Arbitration {Docket No. 23] is hereby denied as moot.

IT IS FURTHER ORDERED that counsel for Plaintiff shall, within seven days of the entry of this Order and Opinion, contact Chambers for the undersigned and schedule a status conference in this case to discuss which, if any, claims remain for trial.

SO ORDERED this the 28th day of March, 2007.

s/ William H. Barbour, Jr.<br>UNITED STATES DISTRICT JUDGE